UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GENO STEPHENS,

      Petitioner,

v.                                                                Case No. 8:12-cv-127-T-27TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## ORDER

Petitioner, a state of Florida inmate proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).    Petitioner challenges his convictions for trafficking in cocaine, possession of heroin, and operating a drug house, entered in 2008 in the Sixth Judicial Circuit, Pinellas County, Florida.  Respondent filed a response (Dkt. 5), and Petitioner filed a reply (Dkt. 8).  Upon review, the petition must be denied.

**Procedural History**

Petitioner was charged with trafficking in cocaine (count one); possession of heroin (count two); possession of marijuana (count three); and operating a drug house (count four).  (Dkt. 7, Ex. 1F, Vol. 1, pp. 5-6.)  He entered a plea of guilty to count four and was sentenced to 364 days' imprisonment on that count.  (Id., pp. 8-13.)  Petitioner proceeded to trial on the remaining counts, and was convicted on counts one and two.  (Id., pp. 37, 38.)  The trial court entered a judgment of acquittal as to count three.  (Id., p. 44.)

Petitioner was sentenced to concurrent terms of fifteen years' imprisonment on count one and

five years' imprisonment on count two.  (Id., pp. 39-43.)  The state appellate court *per curiam* affirmed his convictions and sentences.  (Dkt. 7, Ex. 1D.)  Petitioner filed an initial motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Dkt. 7, Ex. 3D, Vol. 1.)  The state court denied the motion in part and dismissed it in part.  (Dkt. 7, Ex. 3D, Vol. 2, pp. 157-206.)  Petitioner subsequently filed a motion for leave to amend his postconviction motion.  (Id., pp. 207-327.)  Considering this pleading as an amended motion in part and a motion for rehearing in part, the state court summarily denied it.  (Id., pp. 328-340; Dkt. 7, Ex. 3D, Vol. 3, pp. 384-428.)  The state appellate court *per curiam* affirmed the denial of Petitioner's postconviction motion.  (Dkt. 7, Ex. 3B.)  Respondent agrees that the petition is timely.

**Standard of Review for Petitions Subject to AEDPA**

This petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Section 2254(d) sets forth a highly deferential standard for federal court review of a state court's findings of law and fact.  It provides that habeas relief may not be granted on a claim adjudicated on the merits in state court unless such determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has explained this deferential standard:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Additionally, "the focus ... is on whether the state court's application of clearly established federal law is objectively unreasonable ... an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). *See Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 130 S.Ct. 1855, 1866 (2010).

A state court's factual findings must also be given deference, and a petitioner bears the burden of overcoming a state court's factual determination by clear and convincing evidence. Specifically, a state court's determinations of fact "shall be presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence." 28 U.S.C. § 2254(e)(1); *Henderson v. Campbell*, 353 F.3d 880, 890-91 (11th Cir. 2003).

**Exhaustion of State Remedies and Procedural Default**

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of

someone who is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d

at 892.  This exception requires a petitioner's "actual" innocence.  *Johnson v. Alabama*, 256 F.3d

1156, 1171 (11th Cir. 2001).  To meet this standard, a petitioner must show a reasonable likelihood

of acquittal absent the constitutional error.  *Schlup*, 513 U.S. at 327.

**Standard of Review for Claims of Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are reviewed under the standard set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984).  To obtain relief under *Strickland*, a petitioner must

show that counsel's performance was deficient and that this deficiency prejudiced the petitioner.  *Id*.

at 687.  In order to show deficient performance, a petitioner must demonstrate that "in light of all

the circumstances, the identified acts or omissions [of counsel] were outside the wide range of

professionally competent assistance." *Id.* at 690.  To demonstrate prejudice, a petitioner must show

"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 694.

Counsel is presumed to have provided effective assistance.  *See id.* at 689-90.  Further, "a

court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged

conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690.

Sustaining a claim of ineffective assistance of counsel is difficult because "[t]he standards created

by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review

is 'doubly' so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citations omitted).  If a court can

dispose of a claim of ineffective assistance of counsel on one prong of the *Strickland* test, the court

need not consider the other prong.  *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

**Discussion**

A.    *Factual Background*

On April 24, 2007, at approximately 7:30 or 8:00 a.m., officers from the St. Petersburg Police Department executed a search warrant at 2218 50th Avenue North in St. Petersburg, Florida.  (Dkt. 7, Ex. 1F, Vol. 3, pp. 226-27, 279).  They believed this residence to be under the care and control of Cora Williams and Geneva Williams.  Petitioner and Geneva Williams were both in the house when the warrant was executed.  (Id., p. 228.)  Prior to executing the warrant, officers had a briefing during which the potential presence of an unidentified black male was addressed.  (Id., p. 273.)  After the warrant was served, law enforcement believed that individual to be Petitioner.  (Id.)

Petitioner was found in a bedroom.  (Id., pp. 233, 238, 280.)  Detectives Antonio Gilliam and John Evans interviewed Petitioner in the bathroom.  (Id., pp. 229, 281.)  Petitioner was placed under arrest in connection with marijuana that was found during the search.  (Id., p. 263.)  Petitioner was relocated from the bathroom to a couch while the officers waited to transport him to jail.  (Id., pp. 233, 282.)  Petitioner asked Detective John Moseley, who was still searching a bedroom near the couch, to look for a specific pair of shoes for him to wear.  (Id., pp. 233-34, 290.)  Petitioner said that the shoes were in the bedroom, under the bed.  (Id., pp. 234, 282, 290.)

Detective Moseley found one shoe and a shoe box under the bed.  (Id., pp. 234, 290-91.)  He looked inside the shoe box because "it had some weight to it" and saw that it contained narcotics.  (Id., pp. 234-36, 284, 291.)  Detective Moseley closed the shoe box and informed Detectives Gilliam and Evans, the lead detectives, and Detective Shannon Douglas, the evidence collection detective, of what he found.   (Id., pp. 234, 282, 293-94, 297.)  Detective Gilliam brought the closed shoe box to Petitioner, who made statements heard by Detectives Gilliam and Evans.  (Id., pp. 235, 284.)

Petitioner said that baggies were inside the shoe box, and that it was heroin and coke. (Id.) When Detective Gilliam opened the box, Petitioner stated that it was all his. (Id, pp. 236, 284.) Detective Douglas also testified that crack cocaine, powder cocaine, and heroin were recovered. (Id., pp. 303-06.)

Testimony concerning Petitioner's connection to the property was presented during trial. When the detectives interviewed him in the bathroom, Petitioner told them that he and Geneva Williams had dated previously for approximately thirty months, had been apart for about two or three years, and had recently gotten back together. (Id., pp. 230, 244-45, 281.)[1] Detective Gilliam testified that Petitioner indicated that he stays at the house and has sex with Geneva Williams, and further indicated that he lives at the house. (Id., pp. 230, 273-74.) He also testified that Petitioner informed him that his clothing was in the garage and bedroom. (Id., p. 273.) Detective Evans also had the impression that Petitioner lived at the house because some of his belongings and clothing were there, and indicated that Petitioner had recently "moved back in." (Id., pp. 281-82.) Additionally, Detective Karen Lemon testified that when she searched one of the bedrooms, she found a photo identification with the name "Geno Miguel Stephens" inside a Bible. (Dkt.7, Ex. 1F, Vol. 4, pp. 341-42.)

However, Detective Gilliam also recalled seeing female clothing, shoes, and belongings in the master bedroom, and Detective Evans did not observe Petitioner's personal belongings in the house. (Dkt. 7, Ex. 1F, Vol. 3, pp. 248, 286-87.) Detective Douglas also recalled seeing women's underwear in a night stand, but did not recall any of Petitioner's belongings in the night stand. (Id.,

---

[1]Although the record further indicates that Petitioner and Geneva Williams had been apart for several years because Petitioner was in prison, the jury did not hear about his incarceration. (Dkt. 7, Ex. 1F, Vol. 3, p. 245.)

p. 313.)  Detective Douglas found a pair of men's shorts, but did not know to whom they belonged. (Id., pp. 313-14.)  Likewise, she saw clothing in the garage but could not determine who it belonged to or how long it had been there.  (Id., p. 319.)

B.     *Petitioner's Claims*

Ground Two[2]: "INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL UNDER AMENDMENT 6, UNITED STATES CONSTITUTION."

In Ground Two, Petitioner claims that counsel was ineffective for not moving to exclude his statements to law enforcement on the basis that officers provided him misleading and insufficient warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  Specifically, he alleges that he was not informed that he had a right to an attorney during questioning, and that if he could not afford an attorney, one would be provided to him before and during questioning.  Petitioner asserts that he would have requested that an attorney be provided prior to answering any questions.

Petitioner argues that his motion would have been granted, the remaining evidence would have been insufficient to sustain his convictions, and he would not have entered a plea to the charge of operating a drug house.  Detective Gilliam testified at trial about the circumstances under which Petitioner was arrested.  This testimony briefly referenced the *Miranda* warnings given to Petitioner at the time of his interview in the bathroom of Geneva Williams's house.

Petitioner appears to contend that Detective Gilliam did not expressly testify that he informed Petitioner of his right to have an attorney present or that an attorney would be appointed if he could not afford one.  Petitioner therefore argues that counsel should have moved to exclude Petitioner's statements to the officers on the basis that they were made after insufficient *Miranda* warnings.  The

---

[2]Several of Petitioner's claims are taken out of order for purposes of evaluating similar but non-sequential claims together.

following exchange occurred during Detective Gilliam's direct examination:

Q.      Okay.  Who did you interview?

A.      I interviewed Geno Stephens.

Q.      Okay.  Can you tell us about that interview?

A.      Yes.  I interviewed Geno Stephens.

Q.      Where did you interview?

A.      In the common bathroom area.

Q.      Why would you take him to the bathroom?

A.      Because once the search warrant is executed, we have several detectives around the house searching around the house.  I escort Geno Stephens to the rest room to be in privacy along with Detective Evans so that he's not being surrounded by a bunch of police officers and also so we can have a clear conversation without a lot of background noise.

Q.      Was he handcuffed at that time?

A.      I believe he was.

Q.      Okay.  And why would you handcuff him?

A.      For our safety protection.

Q.      And how does your interview begin?

A.      The interview begins, of course, with me introducing myself, with me getting the demographic information from Geno Stephens, and with advising him of his rights.

Q.      And what are those rights that you advise him of?

A.      I advise him of his rights to remain silent.  I inform him anything that he says can and will be used against him in a court of law.  I advise him of his right to an attorney, and I also advise him or ask him if he understood his rights and if he desires to speak with me.

Q.      And did he state that he understood his rights?

A.     Yes, he did.

Q.     And after he said he understood them, did he decide that he wanted to speak with you?

A.     Yes.

(Dkt. 7, Ex. 1F, Vol. 3, pp. 229-30.)

Petitioner raised this claim of ineffective assistance of counsel as the sole issue on direct appeal, asserting that counsel's deficiency was apparent from the face of the record.  Petitioner argued that law enforcement was required to inform him with specificity that he had the right to an attorney before and during questioning, and that if he could not afford an attorney, one would be appointed for him.  (Dkt. 7, Ex. 1A.)  In the answer brief, the State asserted that the record did not demonstrate ineffective assistance of counsel.  (Dkt. 7, Ex. 1B.)  The State maintained that Detective Gilliam did not testify as to the exact warnings he recited to Petitioner but instead was testifying in "summary and general form" regarding the substance of the *Miranda* warnings provided.  (Id., p. 4.)  The State therefore asserted that, taken in context, Detective Gilliam's testimony did not support a finding of ineffective assistance of counsel.

Although appellants typically do not raise claims of ineffective assistance of counsel on direct appeal, they are not barred outright from doing so.  Such a claim can be raised on direct appeal when the record clearly demonstrates that counsel was ineffective.  "An ineffective assistance of counsel claim may be brought on direct appeal only in the 'rare' instance where (1) the ineffectiveness is apparent on the face of the record, and (2) it would be 'a waste of judicial resources to require the trial court to address the issue.'"  *Ellerbee v. State*, 87 So. 3d 730, 739 (Fla. 2012) (quoting *Blanco v. Wainwright*, 507 So.2d 1377, 1384 (Fla. 1987)).

Petitioner's claim was briefed on the merits.  The State did not argue any procedural bar in its answer brief, and the state appellate court gave no indication that it disposed of the claim on a procedural basis or found the claim to be improperly raised.  (Dkt. 7, Exs. 1B, 1D.)  Therefore, by affirming the judgment and sentence, the state appellate court is presumed to have considered and rejected Petitioner's claim of ineffective assistance of counsel.  The state appellate court's *per curiam* affirmance warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby,* 538 U.S. 906 (2003).

The record supports the denial of this claim.  Prior to questioning, a suspect must be warned "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479.  Further, "the need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires." *Id*. at 470.

As the State argued on appeal, Detective Gilliam's testimony concerning the *Miranda* rights he provided to Petitioner was presented in summary fashion and it is not apparent that he was providing a verbatim rendering of what he told Petitioner.  Accordingly, Detective Gilliam's testimony summarizing the warnings does not show that he in fact failed to convey Petitioner's rights to him as required by *Miranda*.  Additionally, on cross-examination, Detective Gilliam responded affirmatively when asked to verify that he provided Petitioner with "his *Miranda* rights."  (Dkt. 7,

Ex. 1F, Vol. 3, p. 239.)  This emphasizes the cursory nature of Detective Gilliam's trial testimony regarding the *Miranda* warnings.  Therefore, it also supports the conclusion that the record does not show Detective Gilliam gave Petitioner inadequate warnings.  In sum, there is no basis to conclude that the statements that Detective Gilliam referred to in his trial testimony did not sufficiently advise Petitioner under *Miranda*.[3]  Counsel was not ineffective in failing to raise a meritless objection, and in any event, Petitioner was not prejudiced by counsel's failure to challenge the adequacy of the *Miranda* warnings which were given to him.  Therefore, the state appellate court's decision was not contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts.

Petitioner raised a version of this ineffective assistance of counsel argument in claim II of his initial postconviction motion, where he asserted that counsel was ineffective for not moving to exclude his statements to law enforcement on the basis that law enforcement did not obtain a waiver of rights form signed by Petitioner and did not record his statements.  To the extent that Petitioner's federal habeas claim could be construed as attempting to raise the exhausted claim that was properly presented in his initial postconviction motion,[4] he is not entitled to relief.  The state court summarily

---

[3]Petitioner also argued on appeal that the *Miranda* warnings were insufficient in part based on a decision of the Florida Supreme Court, *State v. Powell*, 998 So. 2d 531 (Fla. 2008), *rev'd*, 559 U.S. 50 (2010), which held that warnings not specifically informing a suspect of his right to counsel during questioning were inadequate under *Miranda*.  However, Petitioner fails to show how this aspect of his claim entitles him to relief.  The United States Supreme Court had previously determined that the language used in advising suspects need not follow a particular formula so long as it conveys the message of *Miranda*.  *See Duckworth v. Eagan*, 492 U.S. 195, 203 (1989); *California v. Prysock*, 453 U.S. 355, 359 (1981).  The United States Supreme Court relied on the precedent of *Duckworth* and *Prysock* when it reversed the Florida Supreme Court's decision.  559 U.S. at 59-64.  Therefore, Petitioner does not show that the state appellate court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law.

[4]The arguments raised in claims I through IV of Petitioner's initial postconviction motion, which the state postconviction court denied in an order signed March 18, 2010, and filed March 19, 2010, are exhausted.  The February 9, 2011 final order denying Petitioner's postconviction motion adopted and incorporated the March 2010 order by reference. (Dkt. 7, Ex. 3D, Vol. 3, p. 384.)  Petitioner then appealed and raised the issues presented in his initial postconviction motion.  Respondent does not assert that the issues presented in Petitioner's initial postconviction motion

denied his argument:

> The Defendant next argues that counsel was ineffective for failing to "submit a motion in limine of detective's statement in regards to Defendant's confession in violation of the fifth constitutional amendment."
>
> The Defendant's argument is not supported by the record. The record reflects that the Defendant was read his Miranda rights prior to being questioned, and thereafter confessed that the drugs were his. Miranda v. Arizona, 384 U.S. 436 (1966). As discussed in Claim I above, such a motion likely would not have been successful. As counsel cannot be deemed ineffective for failing to pursue a meritless claim, this claim is denied.

(Dkt. 7, Ex. D3, Vol. 2, p. 159) (court's record citations omitted).

The record supports this conclusion. As addressed, the record fails to show that Petitioner was not adequately warned pursuant to *Miranda* prior to making incriminating statements about the drugs that were recovered. Although the order does not expressly reference his allegations that counsel should have moved to limit the testimony on the basis that police did not obtain a written waiver or tape his statements, the state court is presumed to have ruled on the merits of the federal constitutional claim before it "in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 131 S.Ct. at 785. Petitioner does not provide authority that law enforcement was required to obtain a signed waiver of his rights, or to record his statements, in order for his statements to be presented at trial.[5] Given these circumstances, counsel cannot be deemed ineffective for the reasons that were asserted in claim II of Petitioner's initial Rule 3.850 motion. The state court's determination on this claim was not contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable determination of the facts.

---

are not exhausted.

[5] *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979) ("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver.").

Finally, as addressed in Petitioner's reply, he attempted to use claim II of his amended postconviction motion to again raise his ineffective assistance of counsel claim on the basis argued on direct appeal and now in his federal habeas petition.  He modified his claim by arguing that counsel was ineffective for failing to move to exclude Petitioner's statements on the basis that the *Miranda* warnings were insufficient.  Petitioner now argues that he demonstrated entitlement to relief in his amended postconviction motion. The state court rejected any attempt to re-argue the claims already presented, and Petitioner's restated claim presented in his amended postconviction motion was therefore not properly raised in the state court.

When the state court denied claims I through IV of Petitioner's initial postconviction motion on the merits, it did not give him leave to amend those grounds.  Accordingly, the court's subsequent order indicates that his amended postconviction motion was an unauthorized pleading insofar as it again raised these grounds, and the court rejected Petitioner's attempt to re-argue them:

> In his amended motion, the Defendant reargues Claims One, Two, Three, and Four of his February 12, 2010 Motion for Postconviction Relief.  Because Claims One, Two, Three, and Four of the Defendant's Motion for Postconviction Relief were properly denied in this Court's March 19, 2010 Order, this Court will consider the instant "Amended Motion for Postconviction Relief" as a motion for rehearing as to Claims One, Two, Three, and Four.
> The issues raised by the Defendant in this motion for rehearing were properly considered by the Court in its March 19, 2010 ruling; therefore, this Court will not grant a rehearing.  Accordingly, the Defendant's Motion for Rehearing is denied.

(Dkt. 7, Ex. 3D, Vol. 2, p. 329.)

Therefore, as any additional or modified argument presented in Petitioner's amended motion for postconviction relief was not properly presented to the state court, it cannot provide relief in Petitioner's federal habeas petition.  The claim, as raised in Petitioner's initial postconviction motion, was properly rejected and the state postconviction court determined that Petitioner could not

re-litigate the same claim by attempting to modify or re-argue his claims in an "amended" motion and was not entitled to a rehearing on his initial claim.[6]   The state appellate court affirmed this determination.   Finally, even assuming that the postconviction court could have considered Petitioner's amended claim on the merits, Petitioner fails to demonstrate that the claim is meritorious for the same reasons addressed in the discussion of the state appellate court's decision. Consequently, Petitioner is not entitled to relief on Ground Two.

Ground Three: "INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL UNDER AMENDMENT 6, UNITED STATES CONSTITUTION."

This claim involves a taped telephone call made while Petitioner was incarcerated in the Pinellas County Jail prior to trial.   During the call, he appeared to concede to possession of heroin but to deny possession of any other substance.   The trial court granted the defense motion *in limine* to exclude the tape from trial.   Petitioner asserts that this had the effect of "exclud[ing] exculpatory evidence" and that his consent to the motion "was not freely and voluntarily made because he could not voluntarily waive defense [sic] of which he was not aware."   (Dkt. 1, p. 8.)   Petitioner further argues that, if the evidence was admitted, it would have contradicted the officers' testimony and "would have bolstered his own testimony since he would have elected to testify."   (Id.)

First, while Petitioner has titled this claim one of ineffective assistance of counsel, he does not explain in his federal habeas petition how counsel was ineffective in regard to the proceedings referenced in his claim.   However, in claim III of his initial Rule 3.850 motion, Petitioner argued that counsel was ineffective for filing the motion *in limine* and erroneously advised him concerning the

---

[6]Authority interpreting Rule 3.850 consistently provides that postconviction claims that have already been raised and adjudicated on the merits are improperly brought in a subsequent postconviction motion.  *See Crescenzo v. State*, 987 So.2d 150 (Fla. 2d DCA 2008); *Hutto v. State*, 981 So.2d 1236 (Fla. 1st DCA 2008); *McKenley v. State*, 937 So.2d 223 (Fla. 3d DCA 2006); *Ousley v. State*, 679 So.2d 1280 (Fla. 1st DCA 1996).

motion, because granting the motion resulted in the exclusion of exculpatory statements that would have contradicted officers' testimony about his incriminating statements. Petitioner also alleged that counsel was ineffective for advising him not to testify, because he had no defense without testifying. Accordingly, Ground Three of Petitioner's habeas petition is liberally construed to raise the exhausted argument presented in claim III of his initial postconviction motion.

Counsel moved to prevent the call from being introduced at trial.[7]  During the call, Petitioner appeared to indicate that he was only concerned about the heroin charge,[8] but that the other drugs were not his:

> [PETITIONER]: Guess what they gave me?  I got heroin trafficking but that shit was never - - that wasn't nothing but 3 grams, but the bag weighed a gram.  So I guess that's why they say 4 grams.  And then they had an ounce of soft, and they charged me.  They got two counts.  That's why my bond 10.
> ...
> [UNIDENTIFIED SPEAKER]: They trying to put you in other people's shit?
> ...
> [PETITIONER]: Yeah, man.  But I already know the heroin going to get dropped down to a possession.  That's the only shit I really worried about, that possession shit there.  Bitch, I will jump on a year and day and fly out, fly on that there.  But that other shit - - bitch, that other shit ain't mine.  I will own up to my boy now.

(Dkt. 7, Ex. 1F, Vol. 3, pp. 195-196.)[9]  The state court denied claim III, finding that Petitioner failed

---

[7]In support of the motion, counsel argued that the tape could not be properly authenticated.  (Dkt. 7, Ex. 1F, Vol. 2, pp. 34-36.) However, the record reflects that counsel acknowledged, for purposes of the motion hearing, that the taped statements attributed to Petitioner were accurate.  (Dkt. 7, Ex. 1F, Vol. 3, pp. 191, 193.) Additionally, the context of the ineffective assistance of counsel claim makes clear that Petitioner agrees he was recorded on the call.

[8]It appears that, while Petitioner was charged with possession of heroin on count two, the State may have initially pursued a charge of trafficking in heroin.

[9]The transcript of the motion *in limine* hearing indicates that the tape was of poor quality and was difficult for the court reporter to transcribe.  Therefore, portions of the transcript reflecting the numerous times that the tape was played contain some discrepancies. (Dkt. 7, Ex. 1F, Vol. 3, pp. 183-185, 205-06.) The court and parties addressed the tape at length in an effort to obtain an accurate rendering of its contents.  This quotation is from Detective Gilliam's reading into the record of a transcript of the call. The parties agreed to this procedure to establish the call's contents for purposes of the hearing. (Id., pp. 193-96.)

to show counsel was ineffective:

> The Defendant argues that counsel was ineffective for "filing a motion in limine which excluded exculpatory evidence." The Defendant concedes in his motion that he stated on the record that he understood the effects of counsel's motion in limine being granted and that he discussed with counsel the effect this would have on his case. Nevertheless, after being made aware of the potential consequences of the motion being granted, by both counsel and the trial judge, the Defendant stated that he desired that the motion in limine be granted.
>
> The Defendant further contends that he was prejudiced by counsel's performance at the motion in limine hearing, "which was deficient because once the trial court advised Defendant that, if he wanted to keep out evidence of his statements made in the telephone conversation, it may prevent the possibility of him making a significant defense argument without having to testify." However, as noted above, the Defendant agreed to the motion in limine and did knowingly, intelligently, and voluntarily waive his right to testify during trial. Beasley v. State, 18 So.3d 473 (Fla. 2009). The Defendant cannot show that counsel was ineffective. Therefore, this claim is denied.

(Dkt. 7, Ex. D3, Vol. 2, p. 160) (court's record citations omitted).

The record supports the denial of this claim. The trial court heard the motion prior to the start of trial. After listening to the tape, the court confirmed with Petitioner that if the tape was not played at trial, there would be no statement introduced denying that the drugs other than the heroin were his, and that his attorney would not be able to argue this point if he did not testify. (Dkt. 7, Ex. 1F, Vol. 3, p. 207.) Petitioner indicated that he had discussed this with counsel. (Id.) The court then specifically asked him, "And do you want me to keep that out even though that may very well prevent the possibility of you making a significant defense argument without having to testify - - and, of course, you never have to testify. Do you understand that?" (Id., pp. 207-208.) Petitioner told the court that he understood, and directly indicated to the court his desire to "Keep it out." (Id., p. 208.)

Petitioner has not demonstrated how counsel performed deficiently in regard to the motion

*in limine*.  First, he cannot show that counsel was ineffective for filing the motion.  According to Petitioner's own statements at the hearing, he wanted the tape excluded from trial despite any potentially beneficial or exculpatory value it may have had.  Furthermore, the introduction of the tape would have contradicted the defense presented at trial.  Counsel asserted in closing arguments that the State's evidence was insufficient to prove Petitioner's actual or constructive possession of any of the drugs.  (Dkt. 7, Ex. 1F, Vol. 4, pp. 415, 420-425, 431-32.)  Therefore, conceding to the presentation of evidence that could be taken as an admission to the heroin charge was contrary to this defense.

Similarly, Petitioner fails to show how counsel was ineffective with regard to argument of the motion.  The motion was granted and the tape was excluded from the trial.  Again, Petitioner told the court that he had discussed the potential downside of excluding the tape with counsel and that he did not want the tape to be played.  He does not demonstrate how counsel's advice was deficient. Once more, Petitioner's seeming admission to the heroin charge as reflected on the tape was inconsistent with the defense presented at trial and would have undermined this approach.

Finally, Petitioner is not entitled to relief to the extent he alleges that counsel's performance in regard to the motion *in limine* prejudiced him on the basis that, had the tape been admitted, he would have testified and the tape would have supported his testimony.  Petitioner fails to specify in his federal habeas petition, or in his initial Rule 3.850 motion, what his potential testimony would have included and how the taped conversation would have supported such testimony.  Additionally, as noted in the order denying his claim, the trial court engaged Petitioner in a colloquy concerning his choice of whether to testify at trial.  He told the court under oath that he had sufficient time to discuss with his lawyers whether he wanted to testify, that no one had threatened him or promised

him anything to make his decision, that the decision was his alone and was made of his own free will with the benefit of his attorneys' advice, and that he did not wish to testify.  (Id., pp. 374-76.) Accordingly, the court found that his decision not to testify was freely and voluntarily made.  (Id., p. 376.)

Lastly, Petitioner asserts in his reply that his amended motion for postconviction relief demonstrated entitlement to relief on this ineffective assistance of counsel claim.  However, as addressed previously, any additional argument presented in Petitioner's amended motion for postconviction relief was not properly presented to the state court and therefore cannot provide federal habeas relief.  The claim, as raised in Petitioner's initial postconviction motion, was properly rejected and the postconviction court determined that Petitioner could not re-litigate the same claim by raising it in an "amended" motion and was not entitled to a rehearing on his initial claim.  To the extent that he raised these assertions on collateral appeal, the appellate court approved of the postconviction court's refusal to consider his re-argument of the claims that were properly denied in its previous order.

Therefore, Petitioner fails to show how counsel was ineffective in regard to the motion *in limine*.  He cannot demonstrate that the state court's finding was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Ground Three warrants no relief.

Ground Four: "INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL UNDER AMENDMENT 6, UNITED STATES CONSTITUTION."

Petitioner argues that he did not knowingly, intelligently, and voluntarily waive his right to testify because he could not have waived defenses of which he was not aware.  Specifically, in his

federal habeas petition, he claims that his sole defense, a lack of knowledge of the illicit nature of the substances, only could have been presented through his testimony.[10]

Petitioner argued in claim IV of his initial Rule 3.850 motion that counsel was ineffective for misadvising him not to testify because, without his testimony, no viable defenses were presented at trial. He did not clearly assert, as he does in his federal habeas petition, that the defense he would have testified to was a lack of knowledge of the illicit nature of the substances. To the extent Petitioner raises his general claim that counsel was ineffective for misadvising him not to testify because he had no other means to set forth a defense, which he exhausted by presenting it in claim IV of his initial postconviction motion, Petitioner is not entitled to relief. The state court denied claim IV:

> The Defendant argues that "trial counsel was ineffective for misadvising defendant not to testify where there was no other significant defense argument." The Defendant argues that by advising the Defendant not to testify, counsel "took away all of the viable defenses to the State's case in chief." As to what viable defenses the Defendant had, the Defendant does not set forth in his motion any particular defense ... [C]onclusory allegations are not enough to satisfy the burden of setting forth a prima facie case based on a legally valid claim. Furthermore, the Defendant did knowingly, intelligently, and voluntarily waive his right to testify as evidenced by the plea colloquy. Accordingly, this claim is denied.

(Dkt. 7, Ex. D3, Vol. 2, p. 160) (court's record citation omitted). The state court properly denied this claim of ineffective assistance of counsel. The claim that was presented to the state court was imprecise and vague and failed to explain how counsel misadvised him in regard to his decision whether to testify. Additionally, as addressed in Ground Three, the court conducted a colloquy with

---

[10] Section 893.101(2), Fla. Stat. (2007), provides that "[l]ack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter." The two charges before the jury were trafficking in cocaine and possession of heroin, both offenses under Chapter 893. (See Dkt. 7, Ex. 1F, Vol. 1, p. 5.) A controlled substance is defined for purposes of Chapter 893 as "any substance named or described in Schedules I-V of s. 893.03." § 893.02(4), Fla. Stat. (2007). Schedule I lists heroin. § 893.03(1)(b)11., Fla. Stat. (2007). Schedule II lists cocaine. § 893.03(2)(a)4., Fla. Stat. (2007).

Petitioner in which he told the court that it was his decision alone not to testify at trial. As a result, the trial court found his decision not to testify was made freely and voluntarily. Consequently, Petitioner cannot demonstrate that the state court's determination as to the argument presented in claim IV of his initial postconviction motion was contrary to or an unreasonable determination of clearly established federal law, or was based on an unreasonable determination of the facts.

As addressed, the more specific claim as presented in Petitioner's federal habeas petition, in which he alleged that his defense would have been lack of knowledge of the illicit nature of the substances, was not raised in state court in his initial postconviction motion. Accordingly, the exhaustion requirement is not met. *See O'Sullivan*, 526 U.S. at 842. Petitioner cannot return to state court to file an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h). The claim is therefore procedurally defaulted. *See Smith*, 256 F.3d at 1138. Petitioner does not argue or demonstrate that either the cause and prejudice or fundamental miscarriage of justice exception would apply. *See id.*

Furthermore, although he raised the more specific assertion in claim IV of his amended postconviction motion that his defense would have been lack of knowledge of the illicit nature of the substances, as discussed in regard to the other grounds raised in his federal habeas petition, the allegations in claim IV of the amended motion were not properly presented to the state court. The postconviction court refused to consider the subsequent presentation of his claim or to grant a rehearing of his initial claim, and this determination was approved by the state appellate court.

Notwithstanding this bar, Petitioner is unable to demonstrate entitlement to relief. First, Petitioner did not indicate in his motion that he was unaware of this potential defense. He also knew that whether to testify was his choice. Even during the motion *in limine* hearing prior to the start of

trial, he was repeatedly made aware by the court that he had the choice of whether to testify at trial. Moreover, the defense focused on the theory that Petitioner did not actually or constructively possess the drugs found in Geneva Williams's house. Despite being aware of all of this information, Petitioner made the decision not to testify at trial about what he knew or did not know concerning the substances. Furthermore, testifying would have exposed him to the inherent dangers of cross-examination, including an inquiry into the number of his past convictions.[11] And counsel was able to assert a defense and a possible explanation for his statements[12] without the potential downside of testifying. Petitioner fails to demonstrate that counsel provided ineffective assistance for advising him not to testify under these circumstances.

Additionally, even if counsel had advised him differently and Petitioner had testified at trial that he had no knowledge of the illicit nature of the substances, he still cannot show prejudice under *Strickland* because he cannot demonstrate a reasonable likelihood that the outcome of the trial would have been different. While this statement would have conflicted with the testimony of two State witnesses that he identified the drugs in the closed shoe box, it is speculative to assert that the jury would have credited his testimony over that of the other witnesses and acquitted him on this basis alone. Resolving conflicting testimony is a question to be determined by the trier of fact. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Petitioner's statements would not change the testimony from two sources that he admitted to the drugs and identified what they were. Thus, any

---

[11]The trial court addressed the State's ability to ask about the number of prior felony convictions or convictions involving dishonesty during its colloquy with Petitioner about his decision not to testify. (Dkt. 7, Ex. 1F, Vol. 4, pp. 374-75.)

[12]During closing argument, counsel suggested that, if Petitioner made incriminating statements, he might have done so to protect Geneva Williams because he already knew he was going to be taken to jail. (Dkt. 7, Ex. 1F, Vol. 4, pp. 419-20.)

claim of prejudice as a result of counsel's advice is speculative and unsupported by record evidence.

*See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

The state court's denial of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law or based upon an unreasonable determination of the facts. Accordingly, Petitioner does not demonstrate entitlement to relief for the reasons asserted in Ground Four.

Ground One: "INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL UNDER AMENDMENT 6, UNITED STATES CONSTITUTION."

Petitioner claims that counsel was ineffective for failing to file a motion to suppress evidence obtained through execution of an allegedly invalid search warrant.[13]  The warrant authorized law enforcement to search the residence located at 2218 50th Avenue North in St. Petersburg, Pinellas County, Florida, for marijuana and cocaine.  The warrant further provided that the residence was believed to be under the care, custody, and control of Cora Williams and Geneva Williams.  It did not mention Petitioner.  An affidavit in support of the search warrant was sworn to by Detectives Gilliam and Evans.

Petitioner asserts that counsel should have moved to suppress evidence on the basis that the search warrant "was invalid because it was based on material facts that were beyond the Affiant's knowledge and that were not supported by any other person having such knowledge." (Dkt. 1, p. 5.) Petitioner argues that a motion to suppress would have been granted, and the remaining evidence would have been insufficient to sustain his convictions.  He further asserts that he would not have

---

[13]Petitioner attached the search warrant and the affidavit in support of it as exhibits to his postconviction motion.

entered a plea to the charge of operating a drug house.

Petitioner raised this claim in ground one of his Rule 3.850 motion.  The state court summarily denied this claim, finding that Petitioner did not demonstrate deficient performance by counsel:

> The Defendant alleges that counsel was ineffective for failing to file a motion to suppress evidence recovered pursuant to an invalid search warrant.  In support of his claim, the Defendant states that he "was not a resident at this address."
>
> A defendant does not have standing to challenge the unlawful search or seizure of the person or property of another when the defendant was not present where the search or seizure occurred and had no interest in the premises or property searched or seized.  As explained in Rakas v. Illinois, the leading decision of the United States Supreme Court explaining the principles currently applied for assessment of Fourth Amendment standing, the question for determination in cases raising standing issues is whether there has been an intrusion upon the defendant's *own* reasonable expectation of privacy.  Rakas v. Illinois, 439 U.S. 128 (1978).
>
> The record supports a factual determination that the Defendant was not, in fact, an overnight guest *nor* was he a guest who, under the totality of the circumstances, necessarily had a valid expectation of privacy in the area searched.  Therefore, because the Defendant lacks standing to challenge the validity of the search warrant, counsel cannot be deemed ineffective for failing to file a motion on a non-meritorious claim.
>
> The Defendant further attacks the sufficiency of the affidavit supporting the search warrant.  See Glass v. State, 604 So. 2d 5, 6 (Fla. 4th DCA 1992) ("An affidavit in support of a search warrant must itself demonstrate probable cause for the issuance of the warrant.").  Florida law provides that a warrant for a search of a private dwelling may not issue unless a reliable affiant provides sworn proof that one of the conditions listed in the statute exists at the time of the warrant application. Section 933.18, Florida Statutes (2007).  The warrant was issued for violation of a law relating to narcotics or drug abuse.  Section 933.18(5), Florida Statutes (2007). Further, the record reflects that a valid search warrant, properly sworn to by two affiants was properly obtained and executed in the Defendant's case.  Simply because the search warrant was not based upon an affiant's personal observation of criminal activity does not render the warrant invalid.  State v. Butler, 655 So. 2d 1123 (Fla. 1995).  This claim is denied.

(Dkt. 7, Ex. 3D,Vol. 2, pp. 158-59) (court's record citations omitted).

In concluding that counsel was not ineffective, the state court first determined that a motion

to suppress would have been futile under the circumstances of this case because Petitioner lacked an expectation of privacy in Geneva Williams's house and therefore would not have had standing to challenge the warrant's sufficiency.

As discussed, some of Petitioner's belongings were found at Geneva Williams's house, and his statements made the officers believe that he lived there. But there was some question about his connection to the property. Petitioner attached to his initial postconviction motion his own affidavit stating that he stayed with his mother at a different address prior to the arrest, and had not seen Geneva Williams until April 23, 2007, when he spent the night. (Dkt. 7, Ex. 3D, Vol. 1, p. 129.) At trial, the defense attempted to distance Petitioner from Geneva Williams's house. Counsel asserted in closing arguments that Petitioner never had constructive or actual possession of the drugs, that the evidence could only show that he stayed at the residence for an indeterminate amount of time, and that he did not live at the residence and therefore was not aware of activities at the house. (Dkt. 7, Ex. 1F, Vol. 4, pp. 413-415, 419-425, 431-32.) During cross-examination of several of the State's witnesses, counsel attempted to emphasize that Petitioner's connection to Geneva Williams and the house was tenuous by emphasizing Petitioner's statements that he merely stayed at the house and had only recently gotten back together with Geneva Williams, and by stressing that few of his belongings were located in the house, but that women's belonging were found. (Dkt. 7, Ex. 1F, Vol. 3, pp. 244-45, 248, 286-87, 313-14.)

The state court appears to have taken the totality of this information to mean that, under the circumstances, Petitioner did not necessarily have a legitimate expectation of privacy in the home.[14]

---

[14]As the state court noted, a person who has a legitimate expectation of privacy in a place may claim the protection of the Fourth Amendment. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *Katz v. United States*, 389 U.S. 347 (1967). To have a legitimate expectation of privacy in a place, it is not necessarily required that a person own or have

To be entitled to relief, Petitioner must show that the state court's conclusion was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1)-(2).   The state court's determinations are entitled to deference, and given the information before the state court, Petitioner fails to meet this burden.

Regardless, whether Petitioner had standing to challenge the warrant is not dispositive as to his ineffective assistance of counsel claim.   Even assuming that Petitioner did have standing to challenge the validity of the search warrant by filing a motion to suppress, his claim would still fail. The state court also rejected Petitioner's claim on the basis that a motion to suppress would have been meritless because the search warrant was properly obtained and executed.  The court's order referenced the portion of the trial transcript where Detective Gilliam testified that he and Detective Evans proceeded to the courthouse and obtained the warrant.

The affidavit in support of the search warrant, sworn to by Detectives Gilliam and Evans, provides that these officers had probable cause to believe that Cora Williams and Geneva Williams were unlawfully distributing marijuana and cocaine from the residence.  (Dkt. 7, Ex. 3D, Vol. 1, p. 140.)   The affidavit stated that they "received information that illegal narcotic activity was occurring" at the residence as a result of "a series of trash pulls and tips."  (Id.)  The affidavit further provided that the detectives engaged in "several spot checks and extensive surveillance" at the home. (Id.)  The detectives observed a car registered to Cora Williams at the address, and observed Geneva

---

exclusive control over it.  For instance, overnight guests may have a legitimate expectation of privacy in their host's home.  *See Minnesota v. Olson*, 495 U.S. 91, 97-99 (1990).  But while "an overnight guest in a home may claim the protection of the Fourth Amendment, ... one who is merely present with the consent of the householder may not." *Minnesota v. Carter*, 525 U.S. 83, 89 (1998).

Williams at the residence as well.  (Id.)  The affidavit also set forth the training and experience of the detectives, who both worked as narcotics detectives.  (Id, pp. 138-140.)

The affidavit provided that, on three occasions within a span of about one week, trash bags were pulled from a trash receptacle near the house.  Detectives Gilliam and Evans were present when the contents of the trash bags were examined.  (Id., pp. 141, 143, 144.)  The first trash pull occurred on April 12, 2007.  Located within the trash bag recovered on that date were numerous clear plastic bags with visible reside of either marijuana or cocaine inside.  (Id., pp. 141-142.)  Also found inside the trash bag was a clear plastic bag containing approximately one gram of marijuana.  (Id., p. 142.)  One of the plastic bags itself contained two smaller plastic bags that also had visible residue.  (Id.)  The same trash bag contained a coupon book addressed to 2218 50th Avenue North.  (Id.)

The second trash pull took place on April 16, 2007.  Inside this bag was one clear plastic bag containing approximately .2 grams of loose marijuana.  (Id., p. 144.)  A presumptive test of the marijuana yielded positive results.  (Id.)  Also recovered from the trash bag was one clear plastic cup containing a suspected marijuana cigar that weighed approximately one gram.  (Id.)  This trash bag also contained a magazine addressed to Geneva Williams at 2218 50th Avenue North, a receipt with Geneva Williams's name on it, and a letter addressed to Geneva Williams at a different address.  (Id., p. 143.)

The third trash pull occurred on April 19, 2007.  This trash bag contained one small zip loc bag with a visible but unknown white residue, which was tested and determined to contain trace amounts of cocaine and marijuana.  (Id., p. 144.)  Also inside the trash bag was a small zip loc bag with an unknown "white/brown" residue.  Testing on it showed a trace amount of cocaine.  (Id.)  The bag also contained three small zip loc bags with a "brownish green" residue that was tested and

determined to contain a trace amount of marijuana.  (Id., p. 145.)  Additionally, a sandwich bag

contained a substance that appeared to be marijuana and was confirmed to be so after testing.  (Id.)

This trash bag also contained a utility bill addressed to Cora Williams at 2218 50th Avenue North,

and a letter addressed to Geneva Williams at 2218 50th Avenue North.  (Id.)

This information, which was set forth in the sworn affidavit, provided probable cause to

believe that contraband was present at the residence.  The Fourth Amendment of the United States

Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be

seized."  U.S. Const. amend. IV.  In determining whether probable cause exists to issue a search

warrant, a judge "is simply to make a practical, common sense decision whether, given all the

circumstances set forth in the affidavit ..., there is a fair probability that contraband or evidence of

a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The facts detailed in the affidavit support the state court's conclusion that the affidavit was

properly sworn to by two affiants who had personal knowledge of material facts that supported a

finding of probable cause to believe that illegal drug activity was occurring at the residence in

question.  Additionally, the warrant described with particularity the location to be searched and the

objects to be seized.  Therefore, counsel would not have had any basis to argue that the affidavit was

deficient and that the search warrant was thereby rendered invalid for the reasons submitted by

Petitioner.[15] And Petitioner does not cite any law of the United States Supreme Court indicating that

---

[15]*See also United States v. Mitchell*, 503 Fed.App'x. 751, 755 (11th Cir.), *cert. denied,* 133 S. Ct. 2783 (2013)
(determination that probable cause existed to issue search warrant was upheld when two trash pulls revealed drugs and
drug-related evidence, law enforcement received tip about drug activity, and suspect had previous drug-related arrests).

counsel should have filed a motion to suppress on the basis he now presents in his federal habeas

petition. The record supports the state court's finding that, because any motion to suppress evidence

contending that the search warrant was invalid due to deficiencies with the supporting affidavit

would have been unsuccessful, counsel could not be deemed ineffective for failing to bring such a

motion.  As the state court found, counsel is not ineffective for not presenting a meritless argument.

*See Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing

to raise issues clearly lacking in merit). Accordingly, Petitioner does not demonstrate that the state

court's ruling was contrary to or an unreasonable application of clearly established federal law or was

based on an unreasonable determination of the facts.

　　　　Finally, in his reply, Petitioner asserts that his amended motion for postconviction relief more

specifically alleged material facts showing that he had standing to challenge the warrant and that the

affidavit in support of the search warrant was deficient.  As discussed in resolving other grounds,

the state court precluded Petitioner from presenting a modified version of his claim in an "amended"

postconviction motion.   To the extent that he raised the arguments presented in Claim I of his

amended motion on collateral appeal, the appellate court approved of the postconviction court's

rejection of Petitioner's attempt to reargue the claims that were properly denied in the order

addressing the initial postconviction motion and the court's subsequent refusal to grant a rehearing.

Thus, any additional facts or assertions presented in his amended postconviction motion cannot

provide federal habeas relief.  Accordingly, Ground One warrants no relief.

Ground Five: "INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL UNDER AMENDMENT 6,
UNITED STATES CONSTITUTION."

　　　　Petitioner argues that counsel was ineffective for failing to investigate and call numerous

witnesses.  In claim V of his initial motion for postconviction relief, Petitioner alleged that counsel

was ineffective for failing to investigate, interview, and depose witnesses.  The state court found his

claim to be insufficiently pled and dismissed it without prejudice to filing a timely, facially sufficient

claim.  (Ex. 3D, Vol. 2, pp. 160-61.)  In claim V of his amended postconviction motion, Petitioner

again asserted that counsel was ineffective for not investigating and calling witnesses.

*Sub-claim A: Failure to Investigate or Call Geneva Williams*

Petitioner argues that counsel was ineffective for failing to call Geneva Williams, who could

have testified that he had standing to challenge the search warrant and that he did not make the

incriminating statements attributed to him by law enforcement.  He alleges that she was available

and willing to testify, and that her testimony would have supported a motion to suppress the

statements and his own trial testimony, and also would have contradicted testimony of law

enforcement.

*(I)     Geneva Williams' Potential Testimony Concerning Petitioner's Standing to Challenge the
        Search Warrant*

The state court first considered Petitioner's argument that Geneva Williams could have

testified to facts showing he had standing to challenge the search warrant.  The state court summarily

denied this portion of Petitioner's amended claim:

> The Defendant was present in the home of Ms. Williams, who was his girlfriend,
> when the St. Petersburg Police Department executed a search warrant.  The
> Defendant alleges that Geneva Williams would have testified that the Defendant did
> not live at her home, was planning on leaving in the morning, and that the clothes he
> had left at her home were merely being held for him while he was at prison and until
> he could find a new place to stay.  Attached to the Defendant's motion as "Exhibit
> H" is an affidavit prepared by Geneva Williams which affirms the above and avers
> that the Defendant did not reside at Geneva Williams' residence and that he lived
> with his mother at a separate residence. Ms. Williams also states that the Defendant
> was not at her residence during the weeks prior to the execution of the search

warrant.  Ms. Williams stated that she could testify if called as a witness in the case.
The Defendant claims that this testimony would have assisted in establishing that he
had a reasonable expectation of privacy in the bedroom and would have supported
a motion to suppress the evidence recovered therein.

The Defendant's allegations along with Ms. Williams' affidavit do not meet
the four requirements necessary to prove ineffective assistance of counsel for failure
to call, investigate, or interview a witness pursuant to Nelson v. State, 875 So. 2d 579
(Fla. 2004).   The Defendant alleges that Ms. Williams' testimony would have
supported the Defendant's claim that he had standing to challenge the search warrant.
 However, in order to suppress a search, the Defendant must demonstrate that he had
a subjective expectation of privacy in the location searched and that the expectation
was reasonable or legitimate.   Hicks v. State, 852 So. 2d 954, 959 (Fla. 5th DCA
2003).   ["]While there are occasions where an overnight guest might have a
legitimate expectation of privacy in someone else's home, one who is merely present
with the consent of a homeowner generally may not claim that expectation."  Id.

The substance of the testimony Ms. Williams' [sic] would have provided
demonstrates the lack of standing the Defendant had in the residence.  The fact that
the Defendant did not live there, had not been in the residence for weeks prior to
execution of the search warrant, and that his clothes were only left in the residence
while he was in prison are all factors that demonstrate that the Defendant did not
have an expectation of privacy in the residence.   Therefore, omission of Ms.
Williams' testimony did not prejudice the outcome of the trial.

Moreover, it is unlikely that Ms. Williams was available to testify at trial or
any time prior to trial.  Ms. Williams is the co-defendant in the instant case.  She was
charged by Information in Case No. CRC07-08606CFANO on June 1, 2007.  Ms.
Williams was litigating her charges stemming from the same search warrant and she
was represented by separate defense counsel at the time.  Ms. Williams' defense
counsel would have likely advised Ms. Williams not to testify at Defendant's trial
and subject herself to making incriminating statements that would be used against her
at her own trial.  Ms. Williams did not plead to her charges until May 12, 2009,
almost a year after the Defendant's trial.  Ms. Williams' affidavit, which is dated
February 16, 2010, indicates that she can now testify on the Defendant's behalf,
however, she makes no reference to her ability to testify before or during the
Defendant's trial.  Therefore, the Defendant has failed to satisfy all of the Nelson
requirements.

Furthermore, the record reflects that a valid search warrant was obtained and
executed in the Defendant's case.  Therefore, even if Ms. Williams' testimony would
have established that the Defendant had standing, it would not have prejudiced the
outcome of the trial because the search warrant was valid.  See § 933.04, Fla. Stat.
The search of a private dwelling is authorized when the law relating to narcotics is
being violated therein.   See § 933.18(5), Fla. Stat.  In the Defendant's case, the
affidavit in support of the search warrant states that the affiants believed that the
occupants of Ms. Williams' residence were in violation of the laws of Florida,

Chapter 893.  The affidavit explains in detail the investigation the affiants conducted in support of probable cause that the laws of Chapter 893 were being violated.  Based upon the affidavit, the search warrant and affidavit were signed by Judge Day on April 23, 2007.  <u>State v. Butler</u>, 655 So. 2d 1123, 1128 (Fla. 1995).  Therefore, a valid search warrant was issued and executed.  Consequently, the Defendant cannot establish the prejudice prong of <u>Nelson</u> or <u>Strickland</u> because even if Ms. Williams could have testified, it would not have affected the validity of the search warrant or the admissibility of the evidence obtained through execution of the search warrant.  Defense counsel cannot be found ineffective for failing to raise a meritless argument.  <u>Teffeteller</u>, 734 So. 2d at 1009, 1023.  Based upon the foregoing, the Defendant's claim is denied.

(Dkt. 7, Ex. 3D, Vol. 3, pp. 385-87) (court's references to exhibits omitted).  The state court's determination is supported by the record.  The state court considered an affidavit signed by Geneva Williams that was attached to Petitioner's amended Rule 3.850 motion as Exhibit H.  As relevant to this portion of Petitioner's claim, the affidavit provides:

> 6.  During the days and weeks prior to the search warrant being executed, it is impossible for Detective A. Gilliam and Detective J. Evans to have witnessed Geno Stephens going in and out of my residence because I had not seen Geno Stephens until April 23, 2007.  Of which he spent the night with me and had intended on leaving the next morning in a 2007 (silver in color) Honda Accord, that he drove there.  However, on April 24, 2007 prior to Geno Stephens leaving, a search warrant was executed on my sister Cora Williams and I.  Geno Stephens does not stay at our residence at 2218 50th Avenue North, St. Petersburg, Florida.
> 7.  Geno Stephens resided with his mother Mary Stephens at 4700 Yarmouth Avenue, St. Petersburg, Florida.

(Dkt. 7. Ex. 3D, Vol. 2, p. 325.)

Petitioner fails to demonstrate that counsel was ineffective for not calling Geneva Williams to testify to this information.  First, as the state court determined, her proposed testimony would not necessarily have shown that he had standing to challenge the search warrant.  Her statement that Petitioner had spent the night prior to the search is the only portion of her potential testimony that could have supported Petitioner's claim.  The remainder of the information in Geneva Williams's affidavit instead indicates he had no standing to challenge the search warrant.

Even if Geneva Williams's potential testimony indicated that, under the circumstances, Petitioner had standing to challenge the search warrant, Petitioner still cannot show ineffective assistance of counsel.  The state court again concluded in considering claim V of Petitioner's amended postconviction motion that the search warrant was properly obtained and executed. Therefore, any support that Geneva Williams could give to Petitioner's potential standing to challenge the search warrant through a motion to suppress would have been of no consequence because the challenge to the warrant would have failed, as addressed in more detail in Ground One.

Furthermore, as the state court's order points out, while Geneva Williams's February 16, 2010 affidavit provided that "I am competent to testify to such facts and would so testify if I appear in court as a witness," there is no indication that she would have testified to this information during the time Petitioner's case was pending. (Id., pp. 326-27.)  Therefore, Petitioner presents no evidence that, at the time this issue would have been heard in the trial court, Geneva Williams would have testified in the manner he now suggests.  Accordingly, Petitioner does not show that counsel was ineffective for failing to call Geneva Williams to provide testimony for this purpose and does not demonstrate that he was prejudiced by counsel's performance.  Consequently, he cannot show that the state court's ruling on this portion of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.

In his reply, Petitioner presents several arguments contending that the postconviction court erred in its denial of these arguments.  He raised these claims on appeal of the postconviction court's order of denial, and the state appellate court rejected them.[16]  Petitioner is not entitled to relief on any

---

[16]In his reply, Petitioner argues, as he did on collateral appeal, that the state court erred in denying the claims presented in his amended postconviction motion.  The allegations in his amended motion as to claim V were properly presented to the state postconviction court, in contrast to the allegations raised in any other claim in his amended motion, and are considered.

of these claims.  Petitioner again argues that he had standing to challenge the warrant, and that the postconviction court overlooked the substance of Geneva Williams's statement at the scene, where she allegedly indicated that the master bedroom was Petitioner's room,[17] and overlooked the substance of Petitioner's interview, in which he stated that he stays at the house.  Petitioner also asserts that the postconviction court overlooked his references to portions of the trial testimony that he believes support his position that he had standing to challenge the warrant.

These assertions do not provide relief for Petitioner.  Even if he was able to establish that he had standing to challenge the warrant, as discussed, a potential challenge to the warrant on the grounds raised by Petitioner would have failed.  Therefore, his assertion that the trial court overlooked this information in determining that counsel was not ineffective for failing to call Geneva Williams to testify regarding standing does not entitle him to relief.

Petitioner also contends that the postconviction court erred to the extent it denied his claim on the basis that Geneva Williams would not necessarily have testified on his behalf.  As discussed, Petitioner's contention that she would have in fact provided favorable testimony while his case was pending remains speculative and unsupported by any record evidence.  As the state court noted, her affidavit only stated in the present tense that she can testify if she is called as a witness.  It did not provide that she was available and willing to testify at the time of Petitioner's pre-trial or trial proceedings, when her own charges apparently remained pending.

Lastly, Petitioner also alleges that the postconviction court overlooked the fact that Petitioner was not named or referenced in the search warrant and that he did not give consent to the search.

---

[17]Petitioner did not specifically refer to documentation concerning Geneva Williams's on-scene statements. It appears that he refers to the portion of Detective Gilliam's deposition, attached to his amended postconviction motion as Exhibit A, where Detective Gilliam stated that Geneva Williams informed him that the master bedroom is where she and Geno sleep.  (Dkt. 7, Ex. 3D, Vol. 2, p. 275.)

As the state court found that the warrant was properly obtained, Petitioner's consent to the search was irrelevant. He does not explain how the fact that he was not identified by name in the warrant could have supported the contention that he had standing to challenge the warrant.

Accordingly, Petitioner fails to show that the state appellate court's rejection of his arguments that the postconviction court erred in denying his claim was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts. Petitioner is not entitled to relief on this portion of Ground Five, Sub-claim A.

*(II) Geneva Williams's Potential Testimony Concerning Petitioner's Lack of Knowledge of the Illicit Nature of the Substances*

Next, the state court considered Petitioner's assertion that counsel should have investigated and called Geneva Williams to testify that Petitioner had no knowledge of the existence of, and illicit nature of, any narcotics found by law enforcement. The state court also rejected this claim:

> The Defendant further claims that Ms. Williams would have testified that the Defendant "lacked knowledge of the existence, and lacked knowledge of the illicit nature of, any and all narcotics found, either before or after the warrant was obtained." The Defendant contends that Ms. Williams' testimony would have "supported an affirmative defense of lack of knowledge."
>
> The Defendant's claim is refuted from the face of the record. While Ms. Williams states in her affidavit that the Defendant does not distribute or sell marijuana or cocaine, her post-Miranda statements to the police were that the Defendant sells drugs. Consequently, Ms. Williams' affidavit, written more nearly three years after the date of the offense is inconsistent with statements made to police at the time of the offenses.
>
> Additionally, any testimony that Ms. Williams would have provided as to what the Defendant did or did not know would have been speculation. The only person that could have testified to the Defendant's lack of knowledge would have been the Defendant. However, the Defendant elected not to testify at trial and did not present any testimony as to his lack of knowledge concerning the illicit nature of the copious amount of drugs recovered from the home. Any testimony that Ms. Williams would have presented concerning the Defendant's knowledge of the illicit nature of the drugs would have been objected to by the State. As a result, the Defendant cannot show any prejudice as to the absence of Ms. Williams' testimony at trial.

In her affidavit, Ms. Williams states that the Defendant does not distribute or sell marijuana or cocaine. This fact does not establish the Defendant's lack of knowledge as to the illicit nature of the drugs. Additionally, the fact that Ms. Williams['] affidavit alleges that she did not hear the Defendant make any admissions regarding the drugs does not mean that he did not make the admission and does not establish the Defendant's lack of knowledge as to the illicit nature of the narcotics. Furthermore, at trial Detective Gilliam testified that the Defendant was read his <u>Miranda</u> rights prior to being questioned, and thereafter confessed that the drugs were his. <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Because the Defendant's claim is refuted from the face of the record and also fails to establish the Defendant's lack of knowledge as to the illicit nature of the drugs, it is denied.

(Dkt. 7, Ex. 3D, Vol. 3, pp. 388-89) (court's footnote and citation to exhibit omitted).

The affidavit of Geneva Williams, attached to Petitioner's amended Rule 3.850 motion, provides that "Geno Stephens has never been involved in any illegal narcotic activities distribution or sells of marijuana or cocaine at 2218 50th Avenue North, St. Petersburg, Florida," and that "[a]t no time did [Geneva Williams] hear Geno Stephens make a confession to Detective A. Gilliam or to Detective J. Evans stating that 'it's heroin and cocaine inside of a box,' and/or 'It's all mine.'" (Dkt. 7, Ex. 3D, Vol. 2, pp. 325, 326.)

The state court correctly concluded that the proposed testimony of Geneva Williams would have called for speculation on her part and therefore could not have demonstrated that Petitioner did not know about the illicit nature of the drugs. Geneva Williams's affidavit provides no factual basis to determine that she knew whether Petitioner lacked knowledge about the existence of or illicit nature of the substances that were recovered. Accordingly, counsel could not have called her to testify to this point at trial because her speculative testimony would have been inadmissible. *See* § 90.604, Fla. Stat. ("[A] witness may not testify to a matter unless evidence is introduced which is

sufficient to support a finding that the witness has personal knowledge of the matter.").[18]  Similarly, as the state court noted, Geneva Williams's statement that she did not hear Petitioner confess does not conclusively show that he did not make the statements attributed to him by law enforcement or that the officers' testimony was inaccurate.  It only means that Geneva Williams did not hear Petitioner make the statements about which law enforcement officers testified.  Therefore, Petitioner fails to show that counsel was ineffective for failing to call Geneva Williams to testify regarding Petitioner's lack of knowledge about the existence or illicit nature of the drugs.   He does not demonstrate that the state postconviction court's decision on this portion of Ground Five was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts.

Petitioner goes on to argue that the state postconviction court erred in denying this portion of his claim because it overlooked several matters.  He raised these contentions on collateral appeal, but the state appellate court rejected them when it affirmed the postconviction court's order of denial.  Petitioner claims that the postconviction court erred because it overlooked that Geneva Williams's statement that he sells drugs was referring to his past activities and therefore was not made in reference to any activity at Geneva Williams's house around the time of his arrest.[19]  This assertion is speculative and no such context is apparent from this statement.  However, even if Geneva Williams was referring to his past activities, her statement still would not show that

---

[18]Furthermore, Petitioner's position is inconsistent with his allegation in Ground Four that he was the only person who could have testified about his lack of knowledge.  Although the claim as presented in Ground Four of the federal habeas petition was not exhausted because it was not properly presented to the state court, Petitioner nevertheless attempts to raise two directly conflicting arguments in his federal habeas petition.

[19]Again, Petitioner appears to refer to a portion of Detective Gilliam's deposition where he recalled Geneva Williams saying that "she thinks Gino Stevens [sic] sells drugs."  (Dkt. 7, Ex. D3, Vol. 2, p. 275.)

Petitioner did not actually have possession or knowledge of the drugs that were recovered.

Petitioner also appears to assert that the state postconviction court misapprehended his argument concerning Geneva Williams's potential testimony that she was in the same room but did not hear Petitioner make any admissions. He asserts this potential testimony would have been relevant to contradict the officers' testimony about his confession. He states that he would have testified, and would have denied any knowledge of the drugs and established that there was joint access and control of the shoe box. Again, that Geneva Williams did not hear Petitioner make incriminating statements does not establish that the statements were not in fact made or that the testimony of the officers that they heard the statements was inaccurate. This claim provides no relief for Petitioner.

Therefore, Petitioner does not demonstrate that, in rejecting these claims, the state appellate court arrived at a conclusion that was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. Consequently, Petitioner is not entitled to relief on Ground Five, Sub-claim A.

*Sub-claim B: Failure to Investigate Law Enforcement Officers and Forensic Chemist*

Petitioner also argues that counsel failed to investigate, interview, or depose officers who wrote police reports, or a forensic chemist, even though counsel knew of the importance of these individuals. Petitioner asserted in claim V of his initial motion for postconviction relief that counsel was ineffective for failing to investigate, interview, and depose witnesses. The state court dismissed claim V of the initial Rule 3.850 motion because it failed to meet the requirements for raising a facially sufficient claim of ineffective assistance of counsel on the basis that counsel failed to call or investigate a witness. The court specifically identified the defects in the claim and dismissed the

claim without prejudice to Petitioner timely filing a properly pled claim:

> [T]he Defendant argues that counsel was ineffective for failing to investigate, interview, and depose witnesses.  When a defendant claims counsel is ineffective for failing to call, interview, or investigate witnesses, the defendant must meet a four-step test to allege a legally valid claim: The Defendant must allege (1) the identity of the prospective witnesses; (2) the substance of the witness's  testimony; (3) an explanation of how the omission of this evidence prejudiced the outcome of the trial; and (4) an assertion that the witness was available to testify.  Nelson v. State, 875 So. 2d 579 (Fla. 2004).
>
> The Defendant has not alleged a legally valid claim; the Defendant fails to specifically state that each witness was available to testify.  Furthermore, when a defendant claims ineffective assistance of counsel based on counsel's failure to investigate or call a specific witness, the defendant must allege that he or she advised counsel of the existence of such a witness.  Prieto v. State, 708 So. 2d 647, 649 (Fla. 2d DCA 1998).  The Defendant fails to specifically state that he advised counsel of the existence of such a witness.  Accordingly, this claim is dismissed without prejudice to the Defendant timely filing a facially sufficient claim.  See Florida Rule of Criminal Procedure 3.850(b); Spera v. State, 971 So. 2d 754 (Fla. 2007).

(Dkt. 7, Ex. 3D, Vol. 2, pp. 160-61.)

In claim V of his amended Rule 3.850 motion, Petitioner claimed that counsel failed to

investigate, interview, or depose the officers who wrote police reports, as well as a forensic chemist.

The state court labeled this portion of Petitioner's argument claim V(b) and again rejected the claim

as insufficient:

> The Defendant further contends that counsel was ineffective for failing to personally "investigate, interview, and depose" Detectives Gilliam and Evans and "Randi Krouskos, Forensic Chemist."  In his amended motion, the Defendant states that through discovery, counsel was provided the depositions and police reports prepared by the Saint Petersburg Police Department.  Thereafter, the Defendant's claim devolves into an argument pertaining to counsel's lack of preparation regarding review of the depositions and police reports.  The Defendant further argues:
>
>> "Counsel was unprepared to file a motion to dismiss search warrant ... or to file a motion to suppress statements ... or to make a reasonable tactical decision not to exclude the jail phone conversation or adequately advise Stephens on the matter so that he would not have consented to excluding it ... or to make a reasonable tactical decision

> to have Stephens testify or adequately advise Stephens on the matter
> so that he would not have waived his right to testify."
>
> After being given leave to amend Claim V of his February 12, 2010 motion, the Defendant has failed to assert a facially sufficient claim. <u>Nelson</u>, 875 So.2d at 579. Furthermore, the grounds raised in Claim V(b) are the very same ones denied in this Court's March 19, 2010 Order. The Defendant cannot use the instant amended motion as opportunity to reargue the merits of claims already denied. Based upon the foregoing, Claim V(b) is denied.

(Dkt. 7, Ex. 3D, Vol. 2, pp. 330-31.) Accordingly, the claim of ineffective assistance of counsel for failure to call witnesses was rejected because it remained facially insufficient even after Petitioner was provided an opportunity to amend the claim and cure the deficiencies specifically identified by the state court. The state court determined that Petitioner's amended claim did not comply with the requirements for stating a sufficient claim of ineffective assistance of counsel for failing to call or investigate a witness, and that Petitioner failed to present a facially sufficient claim even after being given leave to amend this ground.

Therefore, the state court's rejection of the claim rested on an independent and adequate state procedural ground. If a state court rejects a petitioner's claim on the basis that the claim has not been properly raised in accordance with state procedure, federal review of the claim in a subsequent federal habeas proceeding is typically not available. *See Coleman v. Thompson*, 501 U.S. 722 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Sims v. Singletary*, 155 F.3d 1297, 1311 (11th Cir. 1998). "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) "the last state court rendering a judgment in the case ... clearly and expressly state[s]

that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim"; (2) the state court's decision "rest[s] solidly on state law grounds" and is not "'intertwined with an interpretation of federal law'"; and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "'manifestly unfair'" way. *Id.* (citations omitted).

The postconviction court found that Petitioner failed to present a sufficient claim in accordance with pleading requirements applicable to state postconviction motions. The state appellate court's rejection of the claim is presumed to rest on the procedural determination set forth by the postconviction court. *See Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir. 1990). The claim would therefore be procedurally defaulted, and Petitioner fails to demonstrate that either the cause and prejudice or fundamental miscarriage of justice exception applies.

Petitioner further alleges that the state postconviction court erred because it failed to realize that, in his amended motion, he was referring to officers other than Detectives Gilliam and Evans, and that he was not attempting to re-litigate other claims.[20]   However, despite these assertions, and notwithstanding his procedural default of these claims, Petitioner fails to show entitlement to relief. He does not explain what statements these individuals would have provided that would have aided his defense, and does not provide any affidavits from them regarding their potential testimony. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on

---

[20]In connection with his assertion that he was not attempting to re-litigate claims, Petitioner also asserts that the postconviction court failed to address his claim in amended claim V asserting that his attorney's performance amounted to a "complete absence of counsel." (Dkt. 8, p. 12.)  To the extent that this assertion is merely a rephrasing of his claim of cumulative error, as addressed in Ground Five, Sub-Claim C, Petitioner does not show entitlement to relief.  Moreover, Petitioner's claim is vague and imprecise and is not supported by any record evidence. Furthermore, the state court disposed of the claims in this portion of amended claim V on an independent and adequate state basis. Petitioner fails to demonstrate an entitlement to federal habeas relief.

affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).

Detectives Gilliam and Evans testified at trial on behalf of the State, and Petitioner does not explain what additional information or potential testimony counsel could have discovered by further investigating or interviewing them or any other law enforcement officers prior to trial, or how such potential information could have aided the defense. Similarly, Petitioner does not explain what the forensic chemist, whom he identified in his state court pleading as Randi Krouskos, would have said or how Krouskos's potential testimony would have aided him.[21] Accordingly, Petitioner fails to assert a sufficient basis to conclude that counsel was ineffective for failing to investigate these individuals.

Finally, the state postconviction court rejected Petitioner's attempt within this ground to re-argue his claims of ineffective assistance of counsel for failure to file motions regarding the search warrant and the admissibility of Petitioner's statements, and in regard to the motion in limine and Petitioner's decision to testify at trial. The postconviction court's rejection of these claims as an improper attempt to re-litigate issues already raised, considered, and denied was also approved by the state appellate court. Consequently, Petitioner fails to demonstrate how he is entitled to any relief on Ground Five, Sub-claim B.

*Sub-claim C: Cumulative Error*

Finally, Petitioner appears to raise a separate claim of cumulative error, asserting that his

---

[21]Krouskos did not testify at trial. Forensic chemist Hillary Markert testified at trial as an expert in the area of controlled substance identification. (Dkt. 7, Ex. 1F, Vol. 4, p. 347.) She testified that substances submitted to the laboratory for testing were heroin and cocaine and testified to the amounts of these substances, as well as testing procedures and the procedure for law enforcement to submit substances to the laboratory for testing. (Id., pp. 347-353, 360-364.)

allegations of ineffective assistance of counsel should be construed together as establishing cumulative error.   Petitioner stated at the conclusion of claim V of his amended postconviction motion that "Grounds One through Five should be reviewed for cumulative error."   The state postconviction court considered claim V of the amended motion, but did not expressly address this particular part of Petitioner's ground.

Nevertheless, Petitioner cannot show how he is entitled to relief.   "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr.*, 342 Fed.App'x. 560, 564 (11th Cir. 2009). The Supreme Court has held, however, in relation to an ineffective assistance of counsel claim, that "'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id*. at 564-65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)).   The claims of ineffective assistance of counsel that were exhausted at the state court level and presented in Petitioner's federal habeas petition have been reviewed, and Petitioner has not demonstrated that he is entitled to relief on any of his claims.   Consequently, even assuming that his claims of ineffective assistance of counsel could be considered together, he would not be able to show any entitlement to relief.   Ground Five, Sub-claim C, must fail.

It is therefore **ORDERED AND ADJUDGED** that Petitioner's petition for writ of habeas corpus (Dkt. 1) is hereby **DENIED**.   The Clerk is directed to enter judgment against Petitioner and close this case.

It is further ordered that Petitioner is not entitled to a certificate of appealability.   A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.   28

U.S.C. § 2253(c)(1).  A district court must first issue a certificate of appealability (COA).  *Id.*  Petitioner is only entitled to a COA if he demonstrates that reasonable jurists would find debatable whether the Court's procedural ruling was correct and whether the § 2254 petition stated "a valid claim of the denial of a constitutional right." *Id.*; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  To make a substantial showing of the denial of a constitutional right, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack*, 529 U.S. at 484, or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Petitioner cannot make the requisite showing because he has not demonstrated that reasonable jurists would find debatable whether the procedural determination that his claims were procedurally defaulted was correct, or whether the petition stated a substantial denial of a constitutional right. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

**DONE AND ORDERED** in Tampa, Florida, on ⟨JANUARY 21ST⟩, 2015.

JAMES D. WHITTEMORE
United States District Judge

SA:ml

Copy to:
Petitioner *pro se*
Counsel of record